Good morning, your honors. Pamela Price. Just one minute, we'll wait for your co-counselor to get situated and we'll start back at 20. All right, you may proceed. We're here today, your honor, because the district court's perspective on the evidence and the allegations in our case was entirely wrong. The court was required under this court's jurisprudence, and I'm specifically referring to both, well, to a variety of cases, most best embodied in McGinnis, the court was required to review and consider the evidence presented by the plaintiff from the perspective of a reasonable African-American woman in the circumstances that Plaintiff Donna Rayon Terrell found herself. As the record reports, she was the first African-American female to be employed as a firefighter with the Contra Costa County Fire Protection District, and from that time until the point at which she essentially filed the lawsuit, she was the victim of a hostile work environment. She finally got the inspector job, right? Yes, she did. And I could certainly be pleased to report to you that she's promoted as well. I'm optimistic that she'll be the first female firefighter in Contra Costa County, but time may prove me correct or wrong. You mean the first chief? Yeah, I'm optimistic. Here's my, I'm trying to figure this out. You have to show a pervasive hostile workplace, and you list a lot of things, and the district court in their 45-page opinion went through all the things, and you went through them in your brief. The thing that concerns me is the spacing of time. Was this just an incident here? This is over a 13-year period. Was this one statement here, one statement here, or was it the type of thing that, you know, at least on a weekly, a monthly basis, that when she went to work, there was this hostile environment? And I think you have to show that it was sort of constant, or at least semi-constant, not just that there was one statement here, they wouldn't let her drive the fire truck over there. That's what my concern is. So could you show me how it was pervasive? My claim is that it was pervasive. It wasn't just isolated comment here or isolated comment there. We tried to break down the periods of time and the locations where she was. It was four different stations, too. That's significant. Yes. And if you look, for instance, during her entire time at stations 69 and 70, you'll see that fairly, and I'm thinking particularly between 1994 and 1996, she is constantly complaining to the supervisor that I'm having problems with this person. I can't get the training, or when he's training me, he's not doing it properly. There's a series, it's documented through that period of time, most best, that she's complaining to the supervisors and saying this is a problem, this is a problem. Finally, when she elects to transfer out, it's based on the supposition of the affirmative action officer that nothing's ever going to change here, and you have got to be the one that has to go. Well, I'm not really asking about whether she, there's really two parts, whether objectively there was this hostile working environment, and number two, whether she perceived it to be such. So putting it apart that she perceived it, I mean, one argument, one point that you make is a strong point, that she went to the EEOC about it, so she must have perceived it. But go to the objective part. Objectively was the hostile environment. Well, if you look at the documented information that we do have, that there was a report, and it's, I believe it's in the evidence that the Captain Garcia reported to the supervisor, that he thought that Morton was constantly criticizing her and criticizing her performance for unnecessarily, and it appeared to him that it could be perhaps because she was a female. Certainly, if you look at, I think you have to look over the scope of the record there, and I apologize, I'm trying to think of specific reports where third parties, there was evidence from other firefighters that they had heard, and I'm thinking of Captain Gatson's testimony, where he said that he had heard people referring to her as a stupid bee, that he had heard derogatory comments being made about her performance by other captains. And he found no difficult, he found no trouble with her performance. So I think that I understand the Court's concern, but I think that overall the district court needed to look at the evidence and to draw the inferences from the evidence that was there in a manner that was favorable to the plaintiff, and not to essentially spend 45 pages saying, well, this is not evidence, this is not evidence, this doesn't reflect a hostile work environment. Kagan. It's sort of a variation on it. I tried to make a list of all this and put it in the years, and it included evidence that was in the record, but that the district court didn't address, which I don't fault the district court for that, because there's less evidence, and so I don't think that it's incumbent on the court to, like, go through each thing. But if I do it, you know, like, there's a lot of stuff early, but let's just take a period and I, you know, maybe I've missed some, too, but let's assume there's just a series of things that happened in the early years, like up to 1992. But then you go for two years and there's one or two things that happen. And then the next three years there's three or four things that happen that what I'm having some trouble with is figuring out, under the case law, how do we benchmark ongoing hostility? In other words, you have such a long period of time, and within different time periods there's sometimes more, there's sometimes less, but sometimes there's only a handful of things, two or three things that happened over, say, a two- or three-year period. So what do we do with that as a legal matter? Well, I'm not sure that that's the record, but I understand. I think what you have one of the pieces of evidence that the district court did not consider that we think is really critical is the declaration of Ellen Kirschman, who is an expert who has studied women in firefighting professions, and who brought some perspective to this, and was able to say that these incidents, while they may seem small or innocuous, that they reflect a larger problem for plaintiff Rayon Terrell. She has to be able to function as a member of the team. She has to be respected as much as her fellow male firefighters, and she has to be in an environment where she knows she can rely upon them. If throughout this period of time she knows that they're calling her names behind her back, or they're saying that she's not competent, and she continues to be exposed to the same persons over and over. I mean, it's she worked with Garcia Price and Morton from 1992 to 1997, and, you know, things did not improve during that time. Price is the epitome of that, because when she's assigned to work with him in 2002, he refuses to allow anything that happened. And so there's no indication that the county ever provided a remedy that was intended or designed to change the environment for her. There's no intervention. But, I mean, it doesn't quite answer my question. What you're arguing, I guess, is that the atmosphere is so charged, you know, that in a way that the circumstances excuse her from trying to document each little thing. Is that a fair statement or not? I believe so. I don't know. Certainly she did not. I'm just trying to understand the theory so that we can try to see if it fits in the law or doesn't fit in the law. I understand that. And I think the law does address where you have, and I'm thinking of the racial cases where the court talks about a racially laden environment. Essentially you had an environment for Captain Terrell that was both racially laden and sexually laden. And there's no evidence that this environment ever changed. It didn't change. In fact, when she worked with, she complained about Garcia and Morton in 1994. You know, Garcia was documented as having made this comment. In September of 1994 she transferred. But then she still had to work with Garcia, and she still had to work with Morton, and she still had to work with Price. In 1996 she complained about Morton and Price. And then she had another incident with Garcia in September of 1996. In 1997 she complained about Morton. And, you know, finally she leaves Station 70. And, I mean, there's no intervention that changes this environment for her. And she goes from firehouse to firehouse, and it follows her. Is there any evidence that when she was out, I know there's evidence about she was belittled when she was late to certain things. But is there any evidence that when she was actually fighting fires that people didn't support her? You know, she, and I'm, I don't know what kind of fires they fought, but, you know, when they went into a building and she was going up to the second floor or something like that, that they, that the males didn't back her up or anything like that, that they, when they're fighting a fire, that they didn't treat her as an equal? Yes, Your Honor. There's actually two instances of that, and I was concerned that the district court ignored that. One is the testimony of Captain Turrell that she was forced to fight an electrical pole fire by herself. That that, she was singled out, and that that was not, you know, customary. That endangered her life. The other was the more remote or the more aged incident involving the, when she was left by the engine. They drove off and left her. And that's not common within the fire district. Well, so the only instance of when she was ever endangered in fighting a fire was the pole fire? The pole fire. I don't really understand exactly what pole fire is. Is that a fire in, like, a transmission box on a telephone pole? It's an electrical fire is my understanding. Okay. And did she have to go up the pole by herself? I don't believe she had to go up the pole by herself. Is there any regulations that, you know, or training manuals that say how you respond to a pole fire and how many people are involved? I don't believe so. But I, that could, that's not in the record. What is in the record is that she, her understanding is that that was not appropriate for her to have to fight that fire by herself. And again, I go back to Dr. Kirschman. Well, but just back up. Is there anything in the record that says that she fought pole fires with males where there were more than one person fighting the fire? No. So this is just her conclusion. I mean, in the record. I'm not belittling it, but it's her conclusion that there should have been more than one person. It's not. It's her experience. Well, that's what I'm saying. What was her experience? Did she testify that other times that she witnessed or saw multiple firefighters fighting a pole fire? No. So she really doesn't have experience. Well, no, she has the experience of being a firefighter for 14 years. She knew at that point that she should not have to fight a pole fire by herself. She's qualified to testify to that. Well, that's what I'm saying. Where does it come from? Other than, you know, and it may be her expert opinion. But other than that, is there any evidence that in the past that more than one person fires, puts out a pole fire? No. We do not have that level of specificity in the, where I guess what the Court is looking for, corroboration in the record. But there's also not a contrary statement or is there? No, not at all. There's not something by the fire, other people in the fire department or the county that says that she's wrong. No. And I don't think you'll find in this record that they are saying that they were the model of tolerance and acceptance for this employee. That's not, I don't think, they're not making that contention. And even at the point that she went to the chief in 2002, she told him, this is what my experience has been. And there's been no evidence to refute that that has been her experience. Or that the district did not ever take action to address her concerns. Could I ask you, when she was transferred to the firehouse that Price was at, there was one where she posted, I guess where you post and bid, they sometimes call it, where you say, I want to go to this firehouse. Did she know that Price was at that firehouse? No. No. I don't believe so, Your Honor. And that may not be in the record, but I don't believe so. But her ability to go to any firehouse within Contra Costa County should not be undermined by people who don't believe that women should be firefighters. She should not be forced to work in that environment. And there is no basis in the law that should allow the county or one of its employees to exclude her from the environment from the firehouse, because he doesn't think that she should be there solely because of her gender. And there's no evidence that suggests that he did not make that request because of her gender. And you have to draw the inferences on summary judgment in favor of the plaintiff. Does that fit into what we have generally in a hostile work environment? It isn't simply a discrimination on a particular occasion or anything. Usually, a hostile work environment is one environment and a continual environment of belittling or treating the person in a hostile way. Here we have four different stations with different people. And I'm just wondering if that really fits within the hostile work environment cases that we have generally had. I think it does. You look at the cumulative effect of the variety of actions that constitute a hostile work environment. In this case, we're not suing these individuals. We're suing the county. We're suing the fire protection district and the chief for allowing the hostile work environment to exist, whether it exists in one station, two stations or four stations. The county is still responsible for the employment and the environment in which her employment takes place. I think one of the critical points that I do want to make as well about how this case has been misviewed is that the evidence of discrete acts should also, has to also be included in the consideration of the totality of the circumstances. The district court's position is that because the analysis is different, that therefore you cannot consider discrete acts as creating a hostile work environment. That runs contrary to the teaching of McGinnis and to the teaching of Morgan. There is no Morgan versus National Passenger Railroad Corporation. The court pointed out that attempting to separate out these acts for purposes of determining what's discrimination, what's hostile environment, is an artificial task. And the court in this case has elevated that artificial task to a rule of law, which does not find support in the decisions of this court. And McGinnis, if you look at the court's analysis of the promotion decision, the court considered the evidence of the hostile work environment. So evidence, however it is viewed, whether it's a discrete act or whether it is use of a racial slur, for instance, all of that has to be considered in determining the totality of the circumstances, both from the objective perspective as well as from the subjective perspective. So if there's a denial of a benefit or a privilege, in this case we're saying it's a denial of her right to go and work at that station. In some other case it could be denial of vacation or denial of family medical leave or denial of a promotion. All of those are discrete acts, but they still have to be considered in evaluating whether or not the plaintiff is in favor of that. Under the Reeves case, our burden is not to persuade the district court that everything is as we say. Our burden is one of production. We produced evidence of both subjective, her subjective perspective, as well as objective conduct. The name-calling, the rumors, all of that is evidence that the district court was required to show to basically persuade her. Her job was not to make credibility determinations. Do you want to save your remaining time for rebuttal? I think so. Thank you. I think the district court summed this case up best when it said that the plaintiff could not just rely upon a heap of evidence and a cloud of smoke in order to establish a tribal issue of fact on the issue of harassment. I think the Court's focus here today on the incidents, the sporadic, the isolated, and the relatively mild nature of all of the incidents that the district court considered is correct. And I think that the real problem with the plaintiff's case here is that although the plaintiff presented a mound of evidence, a long list of events occurring over a 13-year period, that none of them, first of all, amounted to severe event that would, under this Court's cases, be by itself enough to establish the existence of a hostile work environment. And second, more importantly, they occur too far apart in time and in too many different places to amount to pervasive harassment. As the Court observed, a number of incidents occurred at Station 70 before, in the early years of Firefighter Rayon's career, and then there is a gap between 1990 and 1991 when she's left behind. The Court's observation about that, I think, and the evidence, what the evidence shows is that Firefighter Terrell was left behind at a fire station because she was not in the fire station when the alarm went off. And there's no evidence that I'm aware of that to some other event in which a non-African American, non-female firefighter was left behind or picked up under similar circumstances. The ---- Kennedy, she was just standing outside the station talking to somebody? I believe the record would reflect that she was outside the station talking to somebody, that there is an alarm bell that goes off outside the station that can be heard, and that apparently, for reasons that aren't clear from the record, the fire engine came out of the firehouse without Firefighter Rayon Terrell on it and left the firehouse. And the captain ---- Did everybody in the fire engine have all their fire clothes on? Yes. That's standard, Your Honor. They would. Did she have hers on? I believe the record would reflect that she did not, Your Honor, but I'm not sure it has that level of detail. So they just, as they're pulling out, they couldn't say, hop on? I think, Your Honor, that they could have, and I think that that would be the plaintiff's position, but I don't think that it's an incident of a hostile work environment that they chose not to. I mean, could they say, hop on, and her uniform or her protective gear would have been on the truck? I don't know the answer to that, Your Honor, and it wouldn't be in the record. I don't think it would be on the truck, but I don't think that's in the record. She later went to the fire independently, didn't she? I believe that's what the record would reflect, Your Honor, that she got onto what's also became upset with her about not blowing the, not responding on the radio to an emergency call in addition to blowing the horn to get the crew back from the exercise that they were doing that day. Let me tell you what bothers me about the case. Maybe you can help me. It's similar to a question that I addressed to the Plaintiff's Counsel. The cases where we've said a few isolated incidents aren't enough, there really were just a few. Like, there was a few derogatory comments about a Mexican-American in one case, a few like one or two. And we've had, in other cases, we've had one or two comments. But we haven't really had a case like this where she has to live and work in an environment that's kind of all-encompassing. And the alleged hostility is continuous over such a period of time. So it seems to me that the evidence amassed, however one evaluates it, doesn't really fit in that legal framework of the one or two things where we've rejected and said that summary judgment was appropriate. I'm interested to kind of hear what framework you think it should be evaluated  I think, Your Honor, the framework it should be evaluated in is the framework that's presented to the Court. Unlike most of the cases, as Your Honor points out, this case involves a 13-year period. And I think that in order to create a continuously hostile work environment over a period of 13 years, you simply have to have more than what this record shows. This record shows periods in which the plaintiff experienced discrete incidents that might or might not be characterized as harassment because of her race and gender. But they come well-spaced out in time, even within the individual periods that the record shows they were occurring. What I'm saying is, and I don't know the answer to this, maybe that's precisely what makes it different. I mean, do you really need, does she have to be literally verbally beat up day in and day out when she's made the complaints, nothing happens, she goes to another fire station, they say, oh, don't apply there, and Price shows up here? I mean, how constant does it have to be before there's an issue of fact for the jury to be able to sit back and say, I wonder if this is hostile environment or not? It's just a question of fact at this point, not a judgment. Well, I think there is a point at which it does become a matter of law. I would agree with Your Honor that there might be a case in which something over a 13-year period would amount to a 13-year-long hostile work environment, but I think it would have to have more in it than this record shows. It requires more than a conclusory statement that I was constantly harassed or the other guys looked like they didn't want to work with me. You'd need more specific incidents. You'd need them occurring closer together in time. You would need to have them not being separated by gaps of years, as is the record in this case. You would also need to have, I think, some continuity in the kinds of events that were occurring and the people that were doing them. And I think Captain Price is a very good example in this regard, because Captain Price, as far as the record shows, and I don't think that it's incorrect, is Captain Price had nothing to do with the plaintiff for a period of almost 10 years. What was the point in time that she went to that other station and he was there and he wanted her to leave and they had the meeting and the head of the station said, look, you're going to stay, but just remember that Price is your superior. You're going to be able to deal with him every day as his superior. During that period of time, every day she comes to work and Price is their superior, isn't that atmosphere, knowing that Price is treating her differently, arguably because she's a woman or African-American, isn't that sense where she comes every day wondering what Price is going to say next, whether he's going to ridicule her in front of the troops or whatever? Well, I have two answers to that, Your Honor. The first one is that, no, I think it would take more than that. I mean, I think it would take more than that single piece of evidence that the supervisor said you have to obey Captain Price to establish that just being in the room with Captain Price. Well, and the other things that Price had said in the past. The other point I would like to make is the record does establish that at the time when the plaintiff was assigned to the station with Price and Price asked for her to be removed, she was acting as a rover. A rover is a firefighter with no permanent station assignment. And, in fact, the plaintiff at that point had no right to be in that station. It wasn't a bid situation, and there was no expectation either on the part of Captain Price, the fire district, or the plaintiff that she would be assigned there any longer than the day she was there. But she was assigned there. She was assigned there for the day. A rover. But a rover might have to come back there. And he says, no, not on my watch. That's correct, Your Honor. And I don't think she was assigned as a rover to that station again, although the record doesn't. The fire department isn't stupid. Well, there's that, Your Honor. But the record doesn't show why that happened, and it could easily have been, and it would be the plaintiff's. Okay. Now you've sort of, to me, encapsulated an issue of fact, whether it's material in light of the others. I don't know. But that is precisely it. Isn't that an inference? Like, he says, look, I don't want her at my station, so then guess what? She's not assigned to his station anymore. It could be because they needed her elsewhere. It could be a hundred reasons, but we don't know that. Isn't there an inference to be drawn? I think so, Your Honor, but it wouldn't be a material inference. I think the material fact for the purposes of establishing or not establishing a hostile work environment in this case is the length of time that passes between the first time she has an unpleasant interaction with Captain Price, which is an ambiguous interaction, and the second time she has an interaction with Captain Price, which is more than ten years later. I think that the case is established that there's got to be something more than a ten-year gap to establish a hostile work environment. So she was only at Price's station once. I mean, when she was at Roper's. She was only there one day. That's what the record shows, Your Honor. Again, I think that the criticism of the district court is that the district court failed to take into consideration specific events or wasn't focusing on the right – in the right way on the events as misplaced. I think the district court made two alternative findings in its opinion. One was that there were a number of incidents that were not – as to which there was insufficient evidence that they occurred because of the plaintiff's race or gender. I think that's an accurate observation. In most of these incidents that did not involve some overt connection to gender, there is no evidence that other firefighters were treated differently or that the objectively be treated that way based on the record that the plaintiff presented. And the second point I'd make about the district court's opinion is that the district court did say, and I think it was correct, that even if all of those incidents were counted, that it's still those incidents are too far apart in time, too mild, and not sufficient to establish a pervasive environment under the cases. And another observation the district court made I think is cogent in this regard, which is that it is, in a sense, the plaintiff's decision not to bring a lawsuit in 1990 or 1991 or 1994 or 1996. And now here we are in 2002. The plaintiff files this action, and we're faced with a record that's 13 years long. And I think that that creates its own problem from the point of view of harassment law, that if you're talking about a period that big, you have to have more in the record than the plaintiff has actually demonstrated. I would like to talk a little bit about the fire inspector position. The record is clear in this case that the plaintiff lacked the essential qualification for the position when her application was rejected. That essential qualification was that she had completed post-832 training. The competing candidate, Fire Inspector Lipkowski, had in fact put on her application form that she did do it. The plaintiff could not do it, and that was the reason that she was rejected for the position. The plaintiff has suggested in the briefing that Chief Richter could be held liable for refusing to make a special exception for the plaintiff, either under Title VII or Section 1983 or Section 1981, and that would submit to the Court, as we did in the briefs, that it is not an adverse personnel action, number one. And number two, there's no evidence that Chief Richter had the power to do that or that he did it for anyone else under similar circumstances. Finally, I would like to address the prevents argument. I think that's the way you pronounce the case. And the plaintiff has suggested that the district court opinion should be reversed because we submitted factual material with the reply papers and the district  I've got two responses there that echo the briefing, which is it's simply, first of all, I think it's a fairness issue that an imposing part of your motion in this Court of Judgment should not be prevented from putting in material that demonstrates that a declaration submitted in opposition to a motion is incomplete or contains misleading statements or in fact contains something that's contradicted by deposition testimony. It's sort of relying on Rule 104, the evidence that you have the right to put in something to make it complete. Right. And I don't think the prevents case really considered that, but also prevents is distinguishable on its facts, because in the prevents case the district court actually refused to consider a response to the supplemental material considered in the reply. And the district court here never had an opportunity to do that. There was no objection filed to it. No, Your Honor. There was no objection filed to it. There was no request to respond to it. There was no motion for reconsideration at the end. In short, the district court really never had an opportunity to do what the court in prevents was reversed for, which was to say to an opposing party, no, I won't listen to what you have to say in responding to what happened. Well, if you were to prevent all of that type of evidence, the moving party would be put in quite a box of not really being able to respond to the opposing brief, right? That's exactly right, Your Honor. And that's, I think, the essence of it, is you really have to have that opportunity to respond. And I don't think that there's – I don't think it would be fair to the district court to put a sua sponte duty on the court to say every time that they got something with a reply brief, I'm going to reopen the proceeding to allow the opposing party to respond to this. I think it's up to the opposing party to say that they have something that they want to say about it. And I have a little time left, but unless the Court has any further questions, we'd submit it and request an affirmation. Thank you.  Ms. Price. I would just like to clarify for the record that there was not a 10-year gap between her contact with Price. There's evidence in the record that the excerpts at 344 and 345 that she complained about Captain Price in July of 1996. And she also was concerned about him through the period of June of 1997. I think that this case is the appropriate case for a hostile environment analysis. The hostile environment analysis depends upon the cumulative effect of a variety of different actions and events. That's exactly how the doctrine was developed and conceived. In Morgan, the United States Supreme Court said as long as you have one act within the period of time, you can consider the entire period of time for purposes of liability. The court recognized that that would allow potentially this type of case, where you have a period of years. And to say that Captain Rayann Terrell should be penalized because she didn't sue them every time they did something to her is really unfair to her. She has continued to be employed there, she's continued to try to do her job, and she should not be held responsible or held she should not be penalized for trying to make it work in the face of these kinds of events. Ultimately, the district courts and this court needs to look at the totality of the circumstances. And I think that it is important to look at her experience from her perspective, as well as there is evidence of objective denigration of her. It's in the deposition testimony of the other firefighters that people were aware that she was viewed differently, and that the inferences that have to be drawn from that have to be drawn on her behalf. Thank you. I want to thank both counsel for your arguments. It's been helpful on both sides. And the case just argued of Terrell v. Contra Costa County is submitted.
judges: Hug, McKeown, Moskowitz